UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **PROJECT VERITAS**, *et al.*, | : | Case No. 19-cv-3130 |
| Plaintiffs, | : | Hon. Edmund A. Sargus |
| -vs- | : | Magistrate Vascura |
| **OHIO ELECTIONS COMMISSION**, *et al.*, | : | **MOTION FOR PRELIMINARY INJUNCTION <u>AS-APPLIED ONLY TO PLAINTIFFS</u>** |
| Defendants. | : | |

Consistent with this Court's November 20, 2019 Order, Plaintiffs remain likely to succeed on the merits of their *as-applied* First Amendment claim. Accordingly, Plaintiffs respectfully request that this Court enjoin the State from applying the "Reporting Restriction" in R.C. 3517.21(A)(1) *to Plaintiffs and their agents,* provided that Plaintiffs' investigative reporting meets Plaintiffs' previously articulated criteria, to which Plaintiffs maintain they regularly adhere,[1] *i.e.* that (1) Plaintiffs are not gathering information for an opposing campaign; (2) Plaintiffs intend to or will actually report the information acquired undercover to the public; (3) the information Plaintiffs report is truthful; (4) Plaintiffs intended reports to the public are on "matters of public concern," "public affairs," "public issues," and/or "public interest" as described by applicable precedent; and (5) Plaintiffs will commit no generally-applicable tort or crime while acquiring or reporting information. See Doc. 28, PageID 359-360; see also Doc. 5 and Doc. 1-1, generally.

The purpose of this Motion is neither to reargue, restate, or supplement Plaintiffs' initial Motion for Preliminary Injunction, nor to object to the Court's Order on that Motion.[2] Rather, it is to urge that the

---

[1] The undisputed evidence before the Court reflects that Plaintiffs "go undercover" not while working for an opposing campaign, but rather, to report truthful political news on public affairs to the public, and do so without committing any generally-applicable tort or crime. See Doc. 4, PageID 50, citing Doc. 1-1, PageID 22-25.

[2] Plaintiffs accept accountability for any shortcoming in effectively communicating their as-applied claim to the Court: while Plaintiffs no doubt made this claim in some circumstances, the Court is also correct that Plaintiffs sought to enjoin the Reporting Restriction "against Plaintiffs **and** others similarly situated" rather than "against Plaintiffs **and/or** others." See Doc. 28, PageID 359. Plaintiffs also accept this Court's textual analysis in full.

Court's analysis supports narrowly enjoining the Reporting Restriction from prohibiting *Plaintiffs'* well-established investigative reporting, because the Restriction is unconstitutional in that application.

Given that this Court has already received 90 pages of substantive briefing and written another 49 pages, Plaintiffs will concisely and narrowly focus on the merits of their as-applied claim without redundancy and with no more factual, textual, or legal background than necessary. To this end, Plaintiffs' incorporate the First Amendment architecture, factors for injunctive relief, and textual analysis of the Restriction articulated in their initial Motion, the vast majority of which still pertain to the claim forming the basis of this Motion. See Docs. 5 and 28, generally.

### I. Background

The background most integral to this Motion is as follows:

(1) This Court concurred with Plaintiffs' narrower construction(s) of the text of R.C. 3517.21(A)(1), and rejected Defendants' broader construction(s). See Doc. 28, PageID 368-72.

(2) This Court acknowledged that Plaintiffs articulated an as-applied claim in their Complaint. See Doc. 28, PageID 358, citing Doc. 4, PageID 50, 55, 56, 64, 67 (Plaintiffs' Complaint, at Paragraphs 4, 43-52, 103-105, 110-112, 126-129, First Prayer for Relief)(*inter alia*, "Defendants must be immediately and permanently enjoined from further restricting Plaintiffs' constitutionally-protected truthful investigative journalism on political campaigns").

(3) Plaintiffs' practices, with which their future reporting will conform, are extensively chronicled. See Doc. 1-1; Doc. 4, PageID 50-52, 54-55; Doc. 5, PageID 74-75; Doc. 28, PageID 354-357.

(4) This Court construed Plaintiffs' initial Motion solely as an effort to enjoin the Reporting Restriction on its face, rather than as narrowly applied to Plaintiffs' investigative reporting. Doc. 28, PageID 358-60 ("The relief Plaintiffs seek, as set forth in their briefing and at oral argument, reaches beyond Plaintiffs' particular circumstances. Plaintiffs do not seek an injunction against enforcement of the statute against just them . . .Therefore, Plaintiffs' claim is facial in that it is not limited to Plaintiffs' particular case . . .").

(5) Employing only facial analysis, this Court concluded as follows:

- "The statute here is content neutral" is "unrelated to the suppression of free expression." Doc. 28, PageID 390.

- The Reporting Restriction, on it face, "sufficiently advances the State's interests in of protecting the associational rights of campaigns and privacy interests," because "campaign organizations have an interest in keeping their communications, sources, and use of funds and internal plans and deliberations confidential," the "disclosure of organizations' confidential internal materials intrudes

- on the privacy of association and belief," and "the statute protects against the invasion of privacy." Doc. 28, PageID 389-390.

- The Court also reasons that "Permitting . . . reporting . . . can have a chilling effect on political participation and association . . . if campaigns cannot trust their employees to keep their information confidential . . . then they will be hampered in their ability to express their beliefs and strategies with others in the campaign." Doc. 28 PageID 390.

- On its face, the Reporting Restriction "does not burden substantially more speech than is necessary to further the government's legitimate interests, and survives intermediate scrutiny." Doc. 28, PageID 397.

- "[F]acial invalidation of a statute remains strong medicine . . . facial challenges remain disfavored ... Plaintiffs have not met their burden of sowing that the statute is substantially overbroad . . . and Plaintiffs are not likely to succeed on the merits of their [facial] First Amendment claim." Doc. 28, PageID 397-398.

This background sets the stage for pivoting to an efficient determination that Plaintiffs are likely to succeed on the merits of their claim that, when applied narrowly to *their* well-established investigative reporting alone, the Reporting Restriction violates their First Amendment rights.

## II. Law and Analysis

When applied to *Plaintiffs'* well-established investigative reporting practices, the Reporting Restriction burdens core political speech, and burdens more speech than is necessary to effectuate the purported governmental interests identified by this Court in its Order, i.e. protection of political campaigns' privacy.

As a threshold matter, the Supreme Court is clear that a plaintiff in a First Amendment case may prevail in an as-applied challenge even where his or her facial challenge does not succeed:

> The distinction [between facial and as-applied challenges] is both instructive and necessary, for it goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint. The *McConnell* majority considered whether the statute was <u>facially</u> invalid. An <u>as-applied</u> challenge was brought in *Wisconsin Right to Life, Inc. v. Federal Election Comm'n,* and the Court confirmed that the challenge could be maintained. Then, in *WRTL*, <u>the controlling opinion of the Court not only entertained an as-applied challenge but also sustained it</u>. The controlling opinion in *WRTL*, which refrained from holding the statute invalid except as applied to the facts then before the Court, was a careful attempt to accept the essential elements of the Court's opinion in *McConnell,* while vindicating the First Amendment arguments made by the *WRTL* parties.

*Citizens United v. Fed. Election Comm'n,* 558 U.S. 310, 331–40 (2010)(emphasis added), citing *United States v. Treasury Employees,* 513 U.S. 454, 477–478 (1995) (contrasting "a facial challenge" with "a

narrower remedy");*Wisconsin Right to Life, Inc. v. Federal Election Comm'n,* 546 U.S. 410, 411–412 (2006) "In upholding § 203 against a facial challenge, we did not purport to resolve future as-applied challenges.").

Like the plaintiffs in *Wisconsin Right to Life,* the Plaintiffs' are likely to succeed on the merits of their as-applied challenge, regardless of the Court's conclusion as to their facial challenge, pursuant to either strict or intermediate scrutiny.

**A. Pursuant to <u>Strict</u> Scrutiny, Plaintiffs are likely to prevail on the merits of their First Amendment claim that the Reporting Restriction is unconstitutional when applied to their well-established investigative reporting.**

This Court concluded that the Reporting Restriction, when assessed on its face, "applies to all reporting of information . . . and does not prohibit reporting information only on certain topics." Doc. 28, PageID 388. Plaintiffs accept this conclusion *for the purposes of this Motion*. However, even if strict scrutiny were construed to not apply to a *facial* challenge to the Reporting Restriction, it does apply to the Restriction's application to *Plaintiffs'* well-established investigative reporting.[3] And when so applied to Plaintiffs, the Reporting Restriction burdens core political speech because Plaintiffs solely report on political matters, with a specific purpose or function.[4]

*First*, heightened First Amendment scrutiny may be applicable in the as-applied context even when not so in the facial context. This is so when application of the restriction to the plaintiff creates a burden that "is related to expression": "If the [Government's] regulation is not related to expression, then the less stringent standard we announced in *United States v. O'Brien* for regulations of noncommunicative conduct controls. If it is, then we are outside of *O'Brien*'s test, and we must [apply] a more demanding standard." *Holder v. Humanitarian Law Project,* 561 U.S. 1, at 27–28 (2010)("the law in *Cohen* was directed at breaches of the peace, <u>but as applied to plaintiffs</u>, the conduct triggering coverage under the statute consists of communicating a message . . . The First Amendment issue before us is . . . whether the Government may

---

[3] This Court acknowledged each of the three bases for strict scrutiny identified by Plaintiffs. Doc. 28, PageID 387. But its Order only address whether the Reporting Restriction is content-based on its face.
[4] Plaintiffs asserted that burdens on *political* speech trigger strict scrutiny, which the Court acknowledged. See Doc. 5, PageID 83; Doc. 28, PageID 387.

4

prohibit what plaintiffs want to do"). Consequently, this Court should apply heightened First Amendment review when analyzing the Restriction's abridgment of Plaintiffs' political reporting.

*Second*, "political speech must prevail against laws that would suppress it, whether by design or inadvertence. Laws that burden political speech are 'subject to strict scrutiny,' which requires the Government to prove that the restriction 'furthers a compelling interest and is narrowly tailored to achieve that interest.'" *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331–40, (2010); see also *Arizona Free Enterprise Club v. Bennett*, 564 U.S. 721, 734 (2011)(laws that burden political speech are subject to strict scrutiny); *McIntyre v. Ohio Elections Commission*, 514 U.S. 334, 347 (1995)(When a law burdens core political speech, it is appropriate to apply "exacting scrutiny").

*Third*, Plaintiffs, and especially Plaintiff Project Veritas Action Fund, solely report on political matters; and they solely investigative campaigns for the purpose of reporting political news. See Doc. 1-1; Doc. 5, PageID 74-75; Doc. 28, PageID 354-357; Doc. 4, PageID 50-52, 54-55 ("In particular, Plaintiffs plan to investigate and report on instances of candidates for President of the United States, United States Congress, and the Ohio Statehouse publicly proclaiming positions that differ from their actual intentions on issues that are important to Ohioans, such as policies regarding energy, the environment, taxation, immigration, health care, unionism, race, feminism, terrorism, and foreign policy and socialism.").

*Fourth*, the reporting restriction burdens Plaintiffs' political reporting because it deprives them of the most effective, if not the only, means of acquiring the political information they seek to report, *i.e.* information that the campaign would rather the public not know. See Doc. 4, PageID 56-60 (*inter alia*, "the Restriction essentially criminalizes Project Veritas' proven and most effective practices."); accord *Martin v. Gross*, 340 F.Supp.3d 87, 108 (D. Mass. 2018) (the "self-authenticating character" of undercover journalism with secret audio recording "makes it unlikely that any other form of newsgathering would be an adequate substitute"); *ACLU of Illinois v. Alvarez*, 679 F.3d 583, 607 (7th Cir. 2012) (audiovisual recordings are "uniquely reliable and powerful methods of preserving and disseminating news and information about events that occur in public"); *Animal Legal Defense Fund v. Wasden*, 878 F.3d 1184, 1203 (9th Cir. 2018)

5

(audiovisual recordings are a "significant medium for the communication of ideas"); (*Animal Legal Def. Fund v. Reynolds*, 353 F. Supp. 3d 812, 819 (S.D. Iowa 2019)(referencing "newsgathering activities that serve as the foundation of investigative journalism"); see also *No Filming on Farms,* by John Stossel, July 16, 2019 ("I'm an investigative reporter. I can't do my job if there are laws that prevent me from showing things. Nobody believes it if you don't see it"), available online at *https://reason.com/video/stossel-no-filming-on-farms/*. Moreover, it is self-evident that the only means of reporting on hypocrisy and duplicity is to acquire facts that can only be acquired undercover: candidates' true intentions, openly shared with staff and donors, just not with the general public.

*Finally,* and separately, when applying the heightened scrutiny explained in *Holder* to the Restriction's abridgment of just Plaintiff's reporting, content-based and speaker-based concerns resurface. Indeed, subsequent to the parties' briefing in this case, the Sixth Circuit cited content-based and speaker-based concerns in ruling in favor of a plaintiff's as-applied challenge. See *Thomas v. Bright,* 937 F.3d 721, 724–38 (6th Cir. 2019)("a purpose component in a scheme such as this is content-based: 'Some facial distinctions based on a message are obvious, defining regulated speech by particular subject matter, and others are more subtle, defining regulated speech by its *function or purpose*"), citing *Doe v. Reed*, 135 S. Ct. at 2227.

Consequently, when the Reporting Restriction's fidelity to *Plaintiffs'* First Amendment rights is assessed, that Restriction remains subject to strict scrutiny. Pursuant thereto, the Restriction fails strict scrutiny for the same reasons already identified in Plaintiffs' initial Motion and Reply, which this Court abstained from addressing in its initial disposition of this matter. See Doc. 5, PageID 83-98; Doc. 23, PageID 202-208. As such, Plaintiffs are likely to succeed on the merits of their as-applied claim.

**B. Even pursuant to <u>Intermediate</u> Scrutiny, Plaintiffs are likely to prevail on the merits of their First Amendment claim that the Reporting Restriction is unconstitutional when applied to their well-established investigative reporting practices.**

This Court concluded that, when analyzed on its face pursuant to intermediate scrutiny, the applicable standard is whether the Reporting Restriction "advances important governmental interests

6

unrelated to the suppression of free speech and does not burden substantially more speech than necessary to further those interests." Doc. 28, PageID 385. Unlike a facial challenge, this as-applied analysis does not require consideration of third parties who may serve solely to secure private information or to privately share facts solely with self-interested actors such as another political campaign. See *Meriwether,* infra (lesser protection for privately directed "speech dealing with matters only of personal interest" or speech that does "not advance an idea transcending personal interest or opinion which impacts our social and/or political lives"). When applied to Plaintiffs' well-established investigative reporting practices, the Reporting Restriction fails this intermediate scrutiny test because Plaintiffs solely report on political matters which qualify as matters of "public concern," "public issues," "public affairs," and/or "public interest": these matters are not "private," and advancing (some) campaigns' "right to privacy" fails to justify abridging the discovery, creation, and reporting of factual information of such a public nature.[5]

*First*, the record fully established that Plaintiffs solely investigate and report on "matters of public concern" or "public interest," "public affairs," or "public issues," and solely seek to do so in the future. See Doc. 1-1; Doc. 4, PageID 50-52, 54-55; Doc. 5, PageID 74-75; Doc. 28, PageID 354-357. Moreover, they do this solely through "investigating and recording in *public* spaces." Doc. 4, PageID 56.

To the extent that this proposition requires support through governing precedent, that precedent is indeed supportive - - subsequent to the parties initial briefing of this matter, one decision from within this District summarized the doctrine as follows:

> Whether plaintiff's speech touches on a matter of "public concern" under the First Amendment [] is a question of law. Speech on a "matter of public concern" is broadly defined as speech that can "be fairly considered as relating to any matter of political, social, or other concern to the community.

*Meriwether v. Trustees of Shawnee State Univ.*, No. 1:18-CV-753, 2019 WL 4222598, at p. 14 (S.D. Ohio Sept. 5, 2019)("Broadly speaking, "gender identity," like many other "controversial subjects" and "sensitive political topics," is "undoubtedly [a] ... matter[ ] of profound 'value and concern to the public'"), citing

---

[5] This Court indicated that "Plaintiffs . . . did not analyze the statute under intermediate scrutiny." Doc. 28, PageID 391. This conclusion limited the Court's need to reach Plaintiffs' as-applied claim pursuant to this level of scrutiny. Plaintiffs again take accountability for failing to clearly state the case they intended to make.

*Snyder v. Phelps*, 562 U.S. 443, 453 (2011); *Rodgers v. Banks*, 344 F.3d 587, 597 (6th Cir. 2003), *Bonnell v. Lorenzo*, 241 F.3d 800, 812 (6th Cir. 2001); *Kerr v. Hurd*, 694 F. Supp. 2d 817, 842 (S.D. Ohio 2010); *Dambrot v. Cent. Mich. Univ.,* 55 F.3d 1177, 1187 (6th Cir. 1995) (to decide the "public concern" question, "the court must determine 'the point of the speech in question.'"). In addition, a Court may consider the "content, form, and context of the speech in light of all of the circumstances of the speech." *Id.* In this case, Plaintiffs' reporting arises from covering political campaigns, and as the Court notes, must be "intended to affect the outcome of an election." Meanwhile, Plaintiffs limit their reporting to *political* reporting *to the public*, as demonstrated both by their past investigative reporting and future intentions. Doc. 4, PageID 50-52, 54-55 ("In particular, Plaintiffs plan to investigate and report on instances of candidates for President of the United States, United States Congress, and the Ohio Statehouse publicly proclaiming positions that differ from their actual intentions on issues that are important to Ohioans, such as policies regarding energy, the environment, taxation, immigration, health care, unionism, race, feminism, terrorism, and foreign policy and socialism."). Accordingly, there can be little dispute as to the public purpose and nature of Plaintiffs' investigative reporting.

*Second*, when applied to Plaintiffs' reporting on matters of public concern, the justifications for the Court's *facial* conclusions fail: applied to Plaintiffs' reporting on such issues, the Reporting Restriction burdens more speech than is necessary to advance those justifications. Applying solely facial analysis, this Court concluded that the Restriction "sufficiently advances the State's interests in protecting the associational rights of campaigns and privacy interests," that "campaign organizations have an interest in keeping their communications, sources, and use of funds and internal plans and deliberations confidential," that the "disclosure of organizations' confidential internal materials intrudes on the privacy of association and belief," and that "the statute protects against the invasion of privacy." Doc. 28, PageID 389-390; see also PageID 390 ("Permitting . . . reporting . . . can have a chilling effect on political participation and association . . . if campaigns cannot trust their employees to keep their information confidential . . . then they will be hampered in their ability to express their beliefs and strategies with others in the campaign," citing

"privacy interests" and "confidentiality"); PageID 391 (citing "disclosure of confidential information"); PageID 392 (citing "protecting against invasion of privacy" and "the harm" in "the release of confidential information."); PageID 396 (citing "protecting against invasion of privacy").[6]

But at the same time, this Court correctly acknowledged that the Reporting Restriction "does not require that the information reported be confidential." Doc. 28, PageID 394. When assessing facial invalidity, here again it is fair enough for the Court to acknowledge that Restriction *could* apply to instances where confidential or private matters are reported, perhaps not even to the public, thus rendering the speech a matter of "private concern." See *Meriwether, supra.* Though *Plaintiffs* solely report matters of *public concern* and *public affairs*, rather than private and confidential information. Thus, the previously-cited privacy and confidentially interests that purport to justify the Reporting Restriction *on its face* suppress more speech than necessary when the Restriction is applied to criminalize *Plaintiffs'* political investigative reporting on public matters.

*Third*, protecting privacy fails in this as-applied context because campaign organizations maintain no "right to privacy" on public matters such as their candidates' energy policy, etc., particularly when seeking public office. As opposed to "trade secrets," political and policy information regarding campaigns and candidates is "unquestionably a matter of public concern." *Bartnicki v. Vopper*, 532 U.S. 514, at 534; see also *The Fla. Star v. B.J.F.,* 491 U.S. 524, at 536–37 (1989). Meanwhile, the mere fact that the candidates and campaigns have not (and probably would not) pre-approve the reporting of that information is not enough to deem it "private" or "confidential" as a matter of law. To the contrary, the Supreme Court is unmistakably clear:

> [P]rivacy concerns give way when balanced against the interest in publishing matters of public importance. One of the costs associated with participation in public affairs is an attendant loss of privacy. The profound national commitment to the principle that debate on public issues should be

---

[6] While the Court's Order also alludes to "associational rights," a careful reading provides the only tangible associational right cited is harm to that right *through* breach of confidentially and invasion of privacy. Moreover, harms to private association caused by investigation and disclosure but not through *state action* cannot abridge the First Amendment's Freedom of Association.

9

uninhibited, robust, and wide open supported this Court's holding in *New York Times Co. v. Sullivan*."

*Bartnicki,* at 516. Simply put, "[t]he right of privacy does not prohibit any publication of matter which is of public or general interest" *Id.,* at 534. Thus, *Plaintiffs'* reporting cannot not be abridged or criminalized to protect interests that are not in play when candidates' policies are at issue - - such an application burdens more speech than is necessary to protect *legitimate* privacy interests.

*Fourth,* in applying the Reporting Restriction to protect campaigns' privacy and confidentiality, the Reporting Restriction burdens more speech than is necessary because the same interest can be accomplished through invasion of privacy torts that do not abridge speech on the *public* matters that Plaintiffs report. See *Florida Star v. BJF,* 491 U.S. 524 (1989)("Unlike Claims based on the common law tort of invasion of privacy . . . civil actions based on § 794.03 require no case-by-case findings that the disclosure of a fact about a person's private life was one that a reasonable person would find highly offensive").

Thus, the Reporting Restriction hinders Plaintiffs from creating another report akin to their 2016 report on then-Senatorial Candidate Ted Strickland, even though the creation and publication of that report failed to trigger the "privacy" interests the Defendants have paraded out to justify the Reporting Restriction. This is, in particular, what Plaintiffs have pled that they wish to do: to report election-related information on public issues to the public, allowing citizens "make informed choices among candidates." *Buckley v. Valeo*, 424 U.S. 1, at 13. Even under intermediate scrutiny, when applied to suppress Plaintiffs' "important journalistic freedoms which the First Amendment jealously protects," enactments like the Reporting Restriction are too broad to withstand scrutiny. *FCC v. League of Women Voters of California*, 468 U.S. 402 (1984). For the foregoing reasons, Plaintiffs are likely to prevail on the merits of their First Amendment as-applied claim when the Court applies intermediate scrutiny solely to Plaintiffs' political reporting.

### III. Conclusion

When the Reporting Restriction is solely applied to abridge and criminalize Plaintiffs' investigative reporting on public affairs, as described above and in Plaintiffs' Complaint, that application (1) triggers strict

scrutiny (which the Restriction fails), because solely political speech is burdened; and (2) fails intermediate scrutiny because campaigns' privacy interests are entitled to little protection as compared to the First Amendment interests in discovery and reporting of important public matters, while the "matters of public concern" that *Plaintiffs* report cannot be abridged on account of "privacy" or "confidentiality" without burdening more speech than necessary.  Accordingly, facial concerns entirely aside, Plaintiffs are likely to prevail on the merits of their First Amendment challenge to the Reporting Restriction *as applied to their political reporting.*

And as this Court has acknowledged, a likelihood of success on the merits of a First Amendment claim authenticates irreparable harm and harm to public interests.  Furthermore, permitting solely *Plaintiffs* to report on matters of public concern that could hypothetically cause solely *political* harms (1) is helpful to the public insofar as it provides education on public affairs; (2) poses no threat to the governmental interests cited by the State itself; and if any threat at all, (3) poses *much less* of a threat than if the Reporting Restriction were enjoined on its face.

Consequently, Plaintiffs respectfully request that this Court issue an order preliminarily enjoining Defendants   from applying the Reporting Restriction to Plaintiffs and their agents, provided that Plaintiffs' investigative reporting, without committing any generally-applicable tort or crime, intends to or actually reports truthful matters of public concern acquired while undercover to the public rather than to an opposing political campaign, in conformance with the practices and plans consistent with Paragraphs 5 through 19 and 45 through 51 of Plaintiffs' First Amended Complaint.

    Respectfully submitted,

    */s/ Maurice A. Thompson*
    Maurice A. Thompson (0078548)
    1851 Center for Constitutional Law
    122 E. Main Street
    Columbus, Ohio 43215
    Tel: (614) 340-9817
    *MThompson@OhioConstitution.org*

        Benjamin Barr (Pro Hac)
        Statecraft PLLC
        444 N. Michigan Ave. #1200
        Chicago, Illinois 60611
        Tel: (202) 595-4671
        *Ben@StatecraftLaw.com*

        CURT C. HARTMAN (0064242)
        THE LAW FIRM OF CURT C. HARTMAN
        7394 Ridgepoint Drive, Suite 8
        Cincinnati, Ohio 45230
        TEL: (513) 379-2923
        *HartmanLawFirm@fuse.net*

## **CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing has been served upon the following

Tiffany Carwile, *Esq.* - *Tiffany.Carwile@OhioAttorneyGeneral.gov*
Office of the Ohio Attorney General
30 E. Broad Street, 17th Floor
Columbus, OH 43215


        Respectfully submitted,

        /s/ *Maurice A. Thompson*
        Maurice A. Thompson (0078548)